UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

DAVID KIRTON,

                                  Petitioner,

              v.                                    9:08-CV-0719
                                                       (DNH)

ROBERT ERCOLE, Superintendent,

                                  Respondent.

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

APPEARANCES:                        OF COUNSEL:

DAVID KIRTON
Petitioner, *pro se*

HON. ANDREW M. CUOMO              THOMAS B. LITSKY, Esq.
New York State Attorney General  Assistant Attorney General
Attorney for Respondent
120 Broadway
New York , NY 10271

DAVID N. HURD
United States District Judge

**MEMORANDUM-DECISION AND ORDER**

**I.  Background**

        **A.  State Court Proceedings**

        According to the evidence adduced at trial, at about 4:15 p.m. on May 11, 2000,

two robbers, wearing dark clothing with their faces obstructed by a ski mask or a hood,

entered the London Plaza branch office of Trustco Bank in the City of Albany and

brandished firearms.  *See* Transcript of Trial of David Kirton (4/23/01) ("Trial Tr.") at pp.

92-93, 273-75.  One of the men directed a bank teller to put money into a bag as the

other yelled at customers in the bank to get onto the floor.  *Id.* at p. 274.  Teller J. Nielsen

placed a quantity of currency, including $50.00 dollars in "bait money" or pre-recorded single dollar bills, in one of the perpetrator's bags.  *Id.* at pp. 111-112.  Additionally, during the course of the robbery, one of the bank's employees activated the bank's silent alarm.  *Id.* at pp. 169-70.  John Hourigan ("Hourigan"), who observed the robbery from outside the bank, called 911 on his cell phone.  *id.* at pp. 133-35.  Hourigan testified that on that day, he observed two armed, black, male robbers enter the bank and soon thereafter leave the establishment.  He observed the suspects enter a bronze-colored Acura, where a third black male was waiting in the driver's seat.  The car then left the scene.  *Id.* at pp. 135-42.

New York State Police Trooper Joseph Germano ("Trooper Germano"), was on duty on May 11, 2000, when he received a radio communication about the bank robbery, as well as a description of the suspects' car.  *Id.* at pp. 219-20.  Soon thereafter, he observed three black males in a bronze-colored Acura traveling Northbound on Route 787.  *Id.* at pp. 223-24.  Trooper Germano followed the Acura in his marked police Jeep. During the pursuit, he observed one of the occupants throw a handgun out of the window by a grassy area near a local church.  *Id.* at pp. 228-31.  Thereafter, as the driver of the vehicle began to lose control of the car, an individual jumped out of the moving car.  *Id.* at pp. 233-35.  Trooper Germano continued to follow the Acura.  The pursuit ended when the Acura collided with another car at a nearby intersection.  *Id.* at p. 236.  At the time, Trooper Germano saw two black men flee the Acura.  Both men were dressed in white shirts and dark colored pants, one carrying a backpack, and the other wearing a stocking cap on his head.  *Id.* at pp. 237-238. Trooper Germano radioed his location and pursued

both suspects. *Id.* at p. 238. He eventually succeeded in stopping one of the two suspects, later identified as Elliot Horsey. *Id.* at pp. 241-44. Soon thereafter, New York State Trooper Charles McCabe ("Trooper McCabe"), who had heard the radio broadcast of the bank robbery as well as Trooper Germano's transmissions, saw petitioner, *pro se* David Kirton ("Kirton" or "petitioner") crouched behind a building in an area near the collision that involved the suspects' car. *Id.* at pp. 286-90. When McCabe asked Kirton to show his hands, he fled the area. *Id.* at pp. 290-91. Trooper McCabe pursued Kirton, however, and he was eventually stopped and placed under arrest. *Id.* at pp. 291-96. After Kirton was in custody, Trooper McCabe returned to the building where he had seen Kirton crouching. There, he discovered a handgun as well as a black bag containing $9,313.00 in cash which included the "bait money" with the pre-recorded serial numbers which the bank teller had provided to the robbers. *Id.* at pp. 300-03, 355-56.

The record also reflects that at the crash scene, Albany Police Department Detective Keith Carroll found a wallet in the Acura's glove compartment which contained Kirton's driver's license, and a registration card indicating that the car was registered to Kirton's mother, Leila G. Kirton. *Id.* at pp. 389-93.

As a result of what had occurred, on May 16, 2000, an Albany County grand jury returned a two count indictment against Kirton and the two other individuals who were apprehended in conjunction with the Trustco Bank robbery. *See* Indictment No. 14-6340 ("Indictment"). In the accusatory instrument, Kirton was charged with first degree

robbery, contrary to N.Y. Penal L. § 160.15(2), and criminal use of a firearm in the first degree, in violation of N.Y. Penal L. § 265.09.  *Id.*

On April 23, 2001, Kirton's jury trial on the foregoing charges commenced in Albany County Court with County Court Judge Dan Lamont presiding.  After summations and the court's instructions to the jury, jury deliberations began.  At the conclusion of deliberations, the jury found Kirton guilty of robbery in the first degree and criminal use of a firearm in the first degree.  *See* Trial Tr. at pp. 618-21.

On November 8, 2001, Kirton was sentenced Kirton on the above convictions as a persistent violent felony offender.  The sentence was an indeterminate term of imprisonment of twenty-five years to life on the robbery conviction, and a consecutive, determinate prison term of five years on the firearm conviction which resulted in an aggregate indeterminate sentence of thirty years to life.  *See* Transcript of Sentencing of David Kirton (11/8/01) at pp. 15-17.

Kirton appealed the foregoing to the New York State Supreme Court, Appellate Division, Third Department.  In the appellate brief, counsel argued that:  (1) the trial court erred by not charging the jury with a lesser included offense; (2) Judge Lamont erred in denying Kirton's request for a mistrial after jury members observed him wearing jail-issued garb; (3) the County Court wrongfully denied Kirton's motion to dismiss the Indictment; (4) the trial court failed to adequately charge the jury; (5) Judge Lamont erroneously failed to grant a mistrial in light of the District Attorney's improper summation; (6) the County Court wrongfully denied Kirton's motion *in limine*; (7) the trial

- 4 -

court erred in its *Huntley*[1] ruling; (8) Judge Lamont erred in sentencing Kirton as a violent persistent felony offender; (9) the County Court's *Sandoval*[2] ruling was erroneous; and (10) the sentence which was imposed was harsh and excessive. *See* Appellate Brief on Appeal (6/12/06) ("App. Br."). The District Attorney opposed the appeal, and in a Memorandum and Order filed on January 11, 2007, the Third Department affirmed Kirton's convictions and sentences. *See People v. Kirton*, 34 A.D.3d 1011 (3d Dept. 2007). Kirton's application for leave to appeal that decision was denied by New York's Court of Appeals. *People v. Kirton*, 8 N.Y.3d 947 (2007).

### B. <u>This Action</u>

On July 3, 2008, petitioner filed a *pro se* petition seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in this District. See Dkt. No. 1 ("Petition"). In that pleading, Kirton asserts numerous theories in support of his request for federal habeas intervention. Specifically, he argues that: (1) the trial court erred by not charging the jury with a lesser included offense and by providing "inadequate" instructions to the jury (*id.*, Grounds One, Four); (2) Judge Lamont wrongfully denied two separate motions for a mistrial, and a motion to dismiss the Indictment, asserted by defense counsel (*id.*, Grounds Two, Three, Five); (3) the trial court wrongfully denied a motion *in limine* filed by Kirton (*id.*, Ground Six); (4) Judge Lamont's rulings following the *Huntley* and *Sandoval* hearings were erroneous (*id.*, Grounds Seven, Nine); and (5) he was improperly

---

[1] *People v. Huntley*, 15 N.Y.2d 72 (1965).

[2] *People v. Sandoval*, 34 N.Y.2d 371 (1974).

sentenced as a violent persistent felony offender, and the aggregate sentence thereafter imposed on Kirton is harsh and excessive (*id.*, Grounds Eight, Ten).

On December 11, 2008, the Office of the Attorney General for the State of New York, acting on respondent's behalf, filed a response in opposition to Kirton's petition and provided the Court with copies of state court records relating to his conviction. *See* Dkt. Nos. 10, 12. Respondent also filed a memorandum of law in opposition to the petition. *See* Dkt. No. 11 ("Resp. Mem."). In the memorandum, respondent claims that Kirton is procedurally barred from obtaining the relief he seeks as to some of his claims, and that all of his grounds for relief are without merit. *Id.*

This matter is now before the Court for disposition.

## II. **Discussion**

### A. **Procedurally Barred Claims**

As noted above, respondent claims that petitioner is procedurally barred from pursuing some of the grounds that he has asserted. *See* Resp. Mem. In support of this argument, respondent contends that Kirton has not fully exhausted the following claims in the state courts: (1) the trial court erred by not charging the jury with a lesser included offense; (2) Judge Lamont committed error in denying Kirton's motion *in limine*; and (3) the trial court improperly sentenced Kirton as a persistent violent felon. *See* Resp. Mem. at pp. 18-20.

It is well-settled that a federal district court " 'may not grant the habeas petition of a state prisoner unless it appears that the applicant has exhausted the remedies available in the courts of the State . . . . ' " *Shabazz v. Artuz*, 336 F.3d 154, 160 (2d Cir.

2003) (quoting *Aparicio v. Artuz*, 269 F.3d 78, 89 (2d Cir. 2001)); *see also Hill v. Mance*, 598 F.Supp.2d 371, 375 (W.D.N.Y. 2009).  This is because "[s]tate courts, like federal courts, are obliged to enforce federal law."  *Galdamez v. Keane*, 394 F.3d 68, 72 (2d Cir. 2005) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999)) (other citations omitted).  As the Supreme Court noted in *O'Sullivan*, "[c]omity . . . dictates that when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief."  *Id.*, 526 U.S. at 844 (citations omitted); *see also Galdamez*, 394 F.3d at 72 (citation omitted).[3]  Thus, this Court must determine whether Kirton has established that he has fully exhausted all of the above claims.[4]

A petitioner exhausts available state remedies in the federal habeas context by: "(i) present[ing] the federal constitutional claim asserted in the petition to the highest state court (after preserving it as required by state law in lower courts); and (ii) inform[ing] that court (and lower courts) about both the factual and legal bases for the federal claim."  *Ramirez v. Attorney Gen.,* 280 F.3d 87, 94 (2d Cir. 2001) (quoting *Picard v. Connor*, 404 U.S. 270, 276-77 (1971)).  A "basic requirement" of this exhaustion doctrine is that "the nature or presentation of the claim must have been likely to alert the court to the claim's federal nature."  *Jones v. Vacco*, 126 F.3d 408, 413 (2d Cir. 1997) (citation omitted); *see*

---

[3]  This exhaustion requirement "reduces friction between the state and federal court systems by avoiding the unseemliness of a federal district court's overturning a state court conviction without the state courts having had an opportunity to correct the constitutional violation in the first instance."  *O'Sullivan*, 526 U.S. at 845 (quotation and citations omitted); *see also Galdamez*, 394 F.3d at 72 (citation omitted).

[4]  Habeas corpus petitioners bear the burden of demonstrating that they have fully exhausted available state remedies.  *Fink v. Bennett*, 514 F.Supp.2d 383, 388 (N.D.N.Y. 2007) (McCurn, S.J.) (collecting cases).

*also Berry v. Hulihan,* No. 08 Civ. 6557, 2009 WL 233981, at *2 (S.D.N.Y. Jan. 28, 2009)

(citations omitted); *Jackson v. Senkowski*, No. 03 CV 1965, 2007 WL 2275848, at *5

(E.D.N.Y. Aug. 7, 2007).  A "state prisoner does not 'fairly present' a claim to a state

court" where the appellate brief "does not alert [the court] to the presence of a federal

claim . . . ."  *Baldwin v. Reese*, 541 U.S. 27, 32 (2004); *see also Williams v. Breslin*, No.

06-CV-2479, 2008 WL 4179475, at *3 (E.D.N.Y. Sept. 9, 2008) (citing *Baldwin*).

In asserting petitioner's claims challenging Judge Lamont's decision which denied

Kirton's request that the jury be charged with a lesser included offense, as well as that

court's decision that denied his motion *in limine*, appellate counsel only cited cases

decided by New York state courts, and provisions of New York's Criminal Procedure Law

("CPL"), in support of those appellate claims.  *See* App. Br., Points I, VI.  Petitioner's

appellate claim challenging the propriety of his being sentenced as a persistent felony

offender similarly failed to cite, or refer in any way, to any federal case, statute or

provision of the United States Constitution.  *See id.*, Point VIII.  Petitioner has therefore

failed to fairly present to the state courts the federal habeas claims he now asserts.  *E.g.*

*Baldwin*, 541 U.S. at 32.

When a claim has not been fully exhausted by a habeas petitioner, a federal court

may find that there is an absence of available state remedies "if it is clear that the

unexhausted claim is procedurally barred by state law, and as such, its presentation in

the state forum would be futile."  *Aparicio*, 269 F.3d at 90 (citing *Reyes v. Keane*, 118

F.3d 136, 139 (2d Cir. 1997)); *see also Lurie v. Wittner*, 228 F.3d 113, 124 (2d Cir.

2000).[5]  Therefore, this Court must determine whether it would be futile for Kirton to present any of the above-mentioned claims to the state courts.

Petitioner cannot now pursue any of these arguments through another appeal to the Third Department because a defendant is "entitled to one (and only one) appeal to the Appellate Division."  *See Aparicio*, 269 F.3d at 91 (citations omitted).  Moreover, since "New York does not otherwise permit collateral attacks on a conviction when the defendant unjustifiably failed to raise the issue on direct appeal," *id.* (citing CPL § 440.10(2)(c)), petitioner could not now properly raise these claims, all of which are clearly based on the record, in a motion to vacate his judgment of conviction pursuant to CPL § 440.10.  *See Aparicio*, 269 F.3d at 91; *Bossett v. Walker*, 41 F.3d 825, 829 (2d Cir. 1994).  Therefore, the above claims are "deemed exhausted" for purposes of Kirton's habeas application.  *St. Helen v. Senkowski*, 374 F.3d 181, 183-84 (2d Cir. 2004); *Spence v. Superintendent, Great Meadow Correctional Facility*, 219 F.3d 162, 170 (2d Cir. 2000).  Although these claims are "deemed exhausted," they are procedurally defaulted.  *See Aparicio*, 269 F.3d at 90 (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)); *see also Ciochenda v. Artus*, No. 06 Civ. 5057, 2009 WL 1026018, at *5 (S.D.N.Y. Apr. 9, 2009) (unexhausted claims which petitioner can no longer pursue in state court are procedurally forfeited).

Federal courts may only consider the merits of procedurally defaulted claims where the petitioner can establish both cause for the procedural default and resulting

---

[5]  Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a federal district court has the authority to deny (but not grant) an unexhausted claim on the merits, and consider the exhausted claims on the merits.  *Aparicio*, 269 F.3d at 91 n.5; *Cuadrado v. Stinson*, 992 F.Supp. 685, 687 (S.D.N.Y. 1998).

prejudice, or alternatively, that a fundamental miscarriage of justice would occur absent federal court review.[6]  *See Dixon*, 293 F.3d at 80-81 (citing *Coleman*); *St. Helen* 374 F.3d at 184 ("[i]n the case of procedural default (including where an unexhausted claim no longer can proceed in state court), [federal courts] may reach the merits of the claim 'only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent' ") (quoting *Bousley v. United States*, 523 U.S. 614, 622 (1998)) (other citations omitted); *Parker v. Phillips*, No. 05-CV-1323, 2008 WL 4415255, at *3 (E.D.N.Y. Sept. 24, 2008) (federal courts may only consider procedurally barred claims where the petitioner establishes cause for his default and prejudice therefrom, or that he is actually innocent of the crime of which he was convicted).

To establish legal "cause" which would enable this Court to consider his procedurally forfeited claims, Kirton must show that some objective, external factor impeded his ability to fully exhaust his claims.  *See Coleman*, 501 U.S. at 753; *Restrepo v. Kelly*, 178 F.3d 634, 638 (2d Cir. 1999); *Pinero v. Greiner*, No. 01 CIV. 9991, 2007 WL 2712496, at *21 (S.D.N.Y. Sept. 17, 2007) (citing *Restrepo*).  Examples of such external factors include "interference by officials," ineffective assistance of counsel, or proof that "the factual or legal basis for a claim was not reasonably available" at the time of petitioner's default.  *See Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Ikker v. Taylor*, No. 08 CV 3301, 2008 WL 5110866, at *4 (E.D.N.Y. Dec. 3, 2008), *appeal dismissed*, *Ikker v. Taylor*, No.09-0090-pr (2d Cir. Apr. 17, 2009).

---

[6]  A fundamental miscarriage of justice exists "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Dixon v. Miller*, 293 F.3d 74, 81 (2d Cir. 2002).

Nowhere in this action does Kirton attempt to establish legal cause for the procedural defaults detailed *ante*.[7]  Significantly, he has never claimed, in any state proceeding, that appellate counsel rendered ineffective assistance by failing to assert his defaulted claims in federal terms.  *E.g.*, Petition at ¶ 10 (petitioner indicating that he has not filed any collateral challenges to his conviction).  Since Kirton has not demonstrated legal cause for his procedural defaults, this Court need not consider whether he has suffered the requisite prejudice, because federal habeas relief is unavailable under this limited exception permitting review of procedurally forfeited claims unless **both** cause and prejudice is demonstrated.  *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985); *Long v. Lord*, No. 03-CV-0461, 2006 WL 1977435, at *6 (N.D.N.Y. Mar. 21, 2006) (McCurn, S.J.); *D'Alessandro v. Fischer*, No. 01 CIV. 2551, 2005 WL 3159674, at *9 n.10 (S.D.N.Y. Nov. 28, 2005) ("[a]s Petitioner has not shown cause for his default, this Court need not even reach the question of whether Petitioner can show prejudice") (citing *Stepney*).

The finding that Kirton has failed to establish cause for his procedural defaults does not necessarily preclude this Court from considering his procedurally forfeited claims, however, because, as noted above, a federal court may nonetheless properly review such claims if it is convinced that the failure to consider the defaulted claims would amount to a fundamental miscarriage of justice.  *E.g.*, *Dixon*, 293 F.3d at 80-81 (citation omitted).  On this question, however, the Second Circuit has noted that:

---

[7]  The petitioner bears the burden of demonstrating cause for his procedural default and resulting prejudice.  *See Simpson v. Portuondo*, No. 01CIV.8744, 2002 WL 31045862, at *5 (S.D.N.Y. June 4, 2002).

> [T]he fundamental miscarriage of justice exception is
> "extremely rare" and should be applied only in "the
> extraordinary cases." *Schlup v. Delo*, 513 U.S. 298, 321-22
> (1995)..... ""[A]ctual innocence' means factual innocence, not
> mere legal insufficiency." *Bousley*[], 523 U.S. [at] 623 .... "To
> establish actual innocence, [a] petitioner must demonstrate
> that, 'in light of all the evidence,' 'it is more likely than not that
> no reasonable juror would have convicted him.'" *Id.* (citing
> *Schlup*, 513 U.S. [at] 327-28) ... (some internal citations and
> quotation marks omitted).

*Sweet v. Bennett*, 353 F.3d 135, 142 (2d Cir. 2003); *see also D'Alessandro*, 2005 WL

3159674, at *8; *Marengo v. Conway*, 342 F.Supp.2d 222, 228 (S.D.N.Y. 2004).

After having reviewed the transcript of the criminal trial below, this Court concurs

with the Third Department that "strong" evidence of Kirton's guilt was adduced at trial.

*Kirton*, 36 A.D.3d at 1013.  As that court noted in denying Kirton's appellate challenge to

the sufficiency of evidence, the District Attorney established that the bank robbers:

> arrived and fled in a vehicle owned by [Kirton] and, after the
> high-speed chase ended in a crash, [Kirton] was observed by
> a State Trooper fleeing, hiding behind a nearby building, and
> then fleeing again; [Kirton] was quickly apprehended, wearing
> clothing described by the eyewitnesses at the bank (including
> a shirt with a particular logo), as recorded by the surveillance
> camera.  Behind the building where [Kirton] had just been
> hiding alone, State Police recovered the bag containing the
> stolen cash, including the bank's prerecorded "bait" money,
> the loaded .357 revolver, and [Kirton]'s jacket containing a
> walkie-talkie radio. [Kirton]'s driver's license and wallet were
> recovered in the glove compartment of the getaway vehicle, a
> ski mask was found outside the car door from which [Kirton]
> had fled, and a walkie-talkie radio was found in the vehicle
> compatible with the one found in [Kirton]'s coat.

*Kirton*, 36 A.D.3d at 1013.

Since petitioner has not demonstrated that the failure to consider the defaulted claims would amount to a fundamental miscarriage of justice as procedurally forfeited, the claims raised in his first, sixth and eighth grounds for relief will be denied.

**B.  Remaining Claims**

**1.  Applicable Standard of Review**

The enactment of the AEDPA brought about significant new limitations on the power of a federal court to grant habeas relief to a state prisoner under 28 U.S.C. § 2254.  In discussing this deferential standard, the Second Circuit noted in *Jones v. West*, 555 F.3d 90 (2d Cir. 2009) that:

> a federal court may grant a writ of habeas corpus for a claim that has previously been adjudicated on the merits by a state court only if the adjudication of the claim:
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* at 96 (quoting 28 U.S.C. § 2254(d)); *see also DeBerry v. Portuondo*, 403 F.3d 57, 66 (2d Cir. 2005); *Miranda v. Bennett*, 322 F.3d 171, 177-78 (2d Cir. 2003); *Boyette v. LeFevre*, 246 F.3d 76, 88 (2d Cir. 2001).  In providing guidance concerning application of this standard, the Second Circuit has noted that:

> [A] state court's decision is "contrary to" clearly established federal law if it contradicts Supreme Court precedent on the application of a legal rule, or addresses a set of facts "materially indistinguishable" from a Supreme Court decision

> but nevertheless comes to a different conclusion than the
> Court did.  [*Williams v. Taylor*, 529 U.S. 362,] at 405-06
> [2000]; *Loliscio v. Goord*, 263 F.3d 178, 184 (2d Cir. 2001)....
> [A] state court's decision is an "unreasonable application of"
> clearly established federal law if the state court "identifies the
> correct governing legal principle from [the Supreme] Court's
> decisions but unreasonably applies that principle to the facts"
> of the case before it.  *Williams*, 529 U.S. at 413.

*Thibodeau v. Portuondo*, 486 F.3d 61, 65 (2d Cir. 2007); *see also Williams v. Artuz*, 237

F.3d 147, 152 (2d Cir. 2001) (citing *Francis S. v. Stone*, 221 F.3d 100, 108-09 (2d Cir.

2000)).

Significantly, a federal court engaged in habeas review is not charged with

determining whether the state court's determination was merely incorrect or erroneous,

but instead whether such determination was "objectively unreasonable."  *Williams*, 529

U.S. at 409; *see also Sellan v. Kuhlman*, 261 F.3d 303, 315 (2d Cir. 2001).  "While the

precise method for distinguishing objectively unreasonable decisions from merely

erroneous ones is somewhat unclear, it is well established in this Circuit that the

objectively unreasonable standard of § 2254(d)(1) means that petitioner must identify

some increment of incorrectness beyond error in order to obtain habeas relief."  *Sorto v.

Herbert*, 497 F.3d 163, 169 (2d Cir. 2007) (internal quotation marks and alteration

omitted).  That increment, however, "need not be great; otherwise habeas relief would be

limited to state court decisions so far off the mark as to suggest judicial incompetence."

*Overton v. Newton*, 295 F.3d 270, 277 (2d Cir. 2002) (internal quotation marks omitted).

2. **Substance of Kirton's Remaining Claims**

a. **Failure to Grant Mistrial Applications**

In his second ground for relief, Kirton asserts that the trial court erred in not granting defense counsel's request for a mistrial after some of the jury members saw him wearing an orange jumpsuit issued by the Albany County Jail. *See* Petition, Ground Two. Petitioner also argues that he is entitled to federal habeas intervention because Judge Lamont denied defense counsel's application for a mistrial after the prosecutor belittled Kirton's defense as "ridiculous" during the course of the prosecution's summation. *Id.*, Ground Five.

The right to a fair trial is guaranteed by the United States Constitution. *United States v. Martinez-Salazar*, 528 U.S. 304, 313 (2000); *Bracy v. Gramley*, 520 U.S. 899, 904-05 (1997) ("the floor established by the Due Process Clause clearly requires a "fair trial in a fair tribunal") (citing *Withrow v. Larkin*, 421 U.S. 35, 46 (1975)); *see also* U.S. Const. amend. VI. (in all criminal prosecutions, "the accused shall enjoy the right to a speedy and public trial, by an impartial jury"). To establish a claim alleging the denial of a fair trial, the party must demonstrate that "the absence of that fairness fatally infected the trial; the acts complained of must be of such quality as necessarily prevents a fair trial." *Lisenba v. California*, 314 U.S. 219, 236 (1941); *see also United States v. Alvarez-Machain*, 504 U.S. 655, 661-62 (1992) (due process of law mandates "a fair trial in accordance with constitutional procedural safeguards") (citation omitted).

The record establishes that as Kirton was walking through the courthouse lobby, he was observed by members of the jury wearing an orange Albany County Jail issued

jumpsuit.  Trial Tr. at pp. 379-80.  In response to defense counsel's application for a

mistrial based on the foregoing, the prosecution argued that the granting of that

application would be an "extreme remedy," and that in lieu of granting the mistrial motion,

the court could provide a curative instruction to the jury.  *Id.* at pp. 380-81.  After the trial

court denied defense counsel's mistrial application, *id.* at p. 381, it offered to provide the

jury with curative instructions in light of the incident.  *Id.* at p. 382.  Defense counsel

declined the County Court's offer.  *Id.*

The record further reflects that after the prosecutor finished delivering his

summation, defense counsel moved for a mistrial because during the prosecution's

closing argument, the District Attorney characterized an aspect of Kirton's defense to the

charges as being "ridiculous."  Trial Tr. at p. 557.  County Court denied the application.

*Id.*

The Appellate Division denied Kirton's appellate claims regarding those rulings.

*Kirton*, 36 A.D.3d at 1014-15.  This Court must therefore ascertain whether that

determination is either contrary to, or represents an unreasonable application of the

above-cited clearly established Supreme Court precedent.

In discussing when a federal district court may properly grant a habeas application

based upon a claim that the state court improperly denied a motion for a mistrial, United

States District Judge Gary L. Sharpe has sagely observed that:

> To prevail on his motion for a mistrial, defense counsel was
> required to establish the existence of "an error or legal defect
> in the proceedings . . . which [was] prejudicial to [petitioner]
> and deprive[d] him of a fair trial."  *See* CPL § 280.10(1).  A
> habeas petitioner is entitled to relief on a claim based upon a
> state court's failure to grant a motion for mistrial "only where

> [the] petitioner can show that the error deprived [him] of a
> fundamentally fair trial." *See Wilson v. Senkowski*, No.
> 02CIV.0231, 2003 WL 21031975, at *12-13 (S.D.N.Y. May 7,
> 2003) (emphasis in original) (citing *Rosario v. Kuhlman*, 839
> F.2d 918, 925 (2d Cir. 1988)) (internal quotation marks
> omitted).

*Toland v. Walsh*, No. 04-CV-0773, 2008 WL 65583, at *20 (N.D.N.Y. Jan. 4, 2008),

*appeal dismissed*, *Toland v. Walsh*, No. 09-1462-pr (2d Cir. June 18, 2009).

As to defense counsel's application for a mistrial after some of the jury members

inadvertently observed Kirton in jail issued clothing, Trial Tr. at pp. 379-80, this Court

notes that it has been held that the brief viewing of a defendant in prison attire does not

deprive a defendant of his right to a fair trial. *United States v. Hurtado*, 47 F.3d 577,

581-82 (2d Cir. 1995); *United States v. Traeger*, 289 F.3d 461, 473 (7th Cir. 2002) (citing

*United States v. Van Chase*, 137 F.3d 579, 583 (8th Cir. 1998) & *United States v.

Halliburton*, 870 F.2d 557, 561 (9th Cir. 1989)); *see also United States v. Pina*, 844 F.2d

1, 7-8 (1st Cir. 1988). Since the brief viewing of Kirton in jail issued attire did not deprive

him of his right to a fundamentally fair trial, the denial of that mistrial application does not

entitle Kirton to federal habeas relief.

Additionally, the record establishes that defense counsel also requested that the

trial court declare a mistrial immediately after the prosecutor concluded his summation

due to the fact that during his summation the District Attorney characterized a portion of

the defense to the charges mounted by Kirton as "ridiculous." Trial Tr. at p. 557. In

conjunction with this claim, the prosecution's entire closing argument has been reviewed.

*See* Trial Tr. at pp. 536-56. That review confirms that the Third Department accurately

- 17 -

concluded that, "[v]iewed as a whole, the prosecution's summation did not deprive [Kirton] of a fair trial in any respect." *Kirton*, 36 A.D.3d at 1014 (citations omitted).[8]

In light of the foregoing, it is determined that Kirton's second and fifth grounds for relief must be denied.

**b.  Denial of Motion to Dismiss Indictment**

The determination, discussed *ante* in conjunction with Kirton's procedurally barred claims, that the proof adduced at trial amply demonstrated his guilt of the crimes of which he was found guilty, precludes the granting of Kirton's petition based upon the claim he asserts in his third ground for relief, which argues that Judge Lamont erred in not dismissing the Indictment on the grounds that there was legally insufficient evidence adduced at trial establishing guilt of the crimes charged.  *See* Petition, Ground Three. This habeas ground is will be denied.

**c.  Improper Jury Instructions**

In his fourth ground, Kirton argues that although the Indictment only charged him as a principle in the bank robbery, and not as one who "acted in concert" with others during the crime, the trial court wrongfully charged the jury that it could find Kirton guilty of the robbery either as a principal or a co-conspirator to the crime.  *See* Petition, Ground

---

[8]  It is noted that now Chief Judge Norman A. Mordue has previously denied a claim seeking habeas relief in this District based upon a prosecutor's statement that a petitioner's defense to a murder charge was nothing more than "smoke and mirrors."  *Santiago v. Burge*, No. 03-CV-0241 (N.D.N.Y. Mar. 20, 2006) (Dkt. No. 16), slip op. at pp. 23-24, *appeal dismissed*, *Santiago v. Burge*, No. 06-2302-pr (2d Cir. Feb. 13, 2008).

Four.  He claims that as a result of such error on the part of the County Court, his conviction must be set aside.  *Id.*[9]

Before a federal court may overturn a conviction due to an allegedly erroneous jury instruction, "it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment."  *Cupp v. Naughten*, 414 U.S. 141, 146 (1973); *see also Estelle*, 502 U.S. at 72 (citing *Cupp*) (other citations omitted).  "The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal."  *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977) (footnote omitted).

Additionally, the Second Circuit has "repeatedly held that 'in order to obtain a writ of habeas corpus in federal court on the ground of error in a state court's instructions to the jury on matters of state law, the petitioner must show not only that the instruction misstated state law but also that the error violated a right guaranteed to him by federal law.' "  *Davis v. Strack*, 270 F.3d 111, 123 (2d Cir. 2001) (quoting *Casillas v. Scully*, 769 F.2d 60, 63 (2d Cir. 1985)) (other citations omitted).

In denying Kirton's appellate claim regarding the instructions provided by the County Court to the jury, the Appellate Division determined that Judge Lamont's charge

---

[9]  Read liberally, petitioner's fourth ground might also be viewed as alleging that Judge Lamont's charge amounted to an illegal amendment of the Indictment.  *See* Petition, Ground Four.  However, such an unexhausted claim would be procedurally barred.  Moreover, the Supreme Court has determined that an indictment is unconstitutionally broadened only where it has been "so altered as to charge a different offense from that found by the grand jury."  *United States v. Miller*, 471 U.S. 130, 144 (1985) (citation omitted).  Nothing before this Court suggests that Judge Lamont's charge altered the Indictment in such a way as to charge a different offense from the charge returned against Kirton by the Grand Jury.

- 19 -

"was clearly permissible" under New York law.  *Kirton*, 36 A.D.3d at 1014 (citations omitted).  Since petitioner has not established that the challenged instruction misstated New York law regarding principal and accessory liability, his federal habeas claim asserting such claim must necessarily fail.  *Davis*, 270 F.3d at 123; *see also Smith v. Rock*, 554 F.Supp.2d 505, 522 (S.D.N.Y. 2008) (citing *Davis*); *Jones v. Conway*, No. 05-CV-0915, 2008 WL 904899, at *9-10 (N.D.N.Y. Mar. 31, 2008) (Kahn, J., adopting Report-Recommendation of Homer, M.J.), *appeal dismissed*, *Jones v. Conway*, No.08-2230-pr (2d Cir. Sept. 25, 2008).

     In light of the foregoing, Kirton's fourth ground for relief will be denied.[10]

### d. Erroneous *Huntley* Ruling

     In his seventh ground, Kirton claims that following the *Huntley* hearing[11] over which Judge Lamont presided, the trial court erred in denying his *in limine* application which sought to suppress the statement he made to law enforcement agents.  *See* Petition, Ground Seven.  Specifically, he asserts that at the time he provided the statement, he had recently sustained a head injury and was therefore incapable of legally waiving his rights under *Miranda*.  *Id.*

---

[10]  Additionally, "a challenged portion of the jury instructions 'may not be judged in artificial isolation,' . . . but rather must be judged as the jury understood it, as part of the whole instruction, and indeed, as part of all the proceedings that were observed by the jury." *Smalls v. Batista*, 191 F.3d 272, 277 (2d Cir. 1999) (quoting *Cupp*, 414 U.S. at 147 & *Chalmers v. Mitchell*, 73 F.3d 1262, 1267 (2d Cir. 1996)); *see also Jones*, 2008 WL 904899, at *9 (citing *Cupp*).  Viewed in the context of the overall charge, Judge Lamont's charge concerning principal and accomplice liability was not erroneous in any way.

[11]  A *Huntley* hearing is conducted to determine whether a defendant's statements to the police must be suppressed on the grounds that he was subjected to custodial interrogation without the warnings required under *Miranda v. Arizona*, 384 U.S. 436 (1966).  *See Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 346 (2d Cir. 1998); *Harris v. New York,* 202 F.Supp.2d 3, 4 & n.3 (S.D.N.Y. 2001); *see also* CPL § 710.

A person challenging a trial court's decision to admit into evidence a statement which the petitioner claims was obtained in violation of his *Miranda* rights must initially demonstrate that the subject statement was actually introduced as evidence at trial. *E.g.*, *Berryhill v. Zant*, 858 F.2d 633, 634 n.1 (11th Cir. 1988).

In rejecting Kirton's *Huntley* claim in the context of his direct appeal, the Third Department noted that his statement to law enforcement agents "was not introduced at trial and no references to it were made in front of the jury." *Kirton*, 36 A.D. at 1012. Kirton has submitted no evidence – much less clear and convincing evidence – which suggests that this factual finding of the Appellate Division is incorrect.[12]

Since Kirton has not established that any reference was made at trial concerning his incriminating statement to law enforcement agents, he cannot prevail on his habeas claim challenging the trial court's *Huntley* ruling. *E.g.*, *Berryhill*, 858 F.2d at 634 n.1. The Court therefore denies his seventh ground for relief.

**e.  <u>Sentencing Claims</u>**

Petitioner has asserted two separate grounds for relief in support of his claim that the sentence imposed entitles him to habeas intervention. In his eighth ground, Kirton claims that the trial court erred in finding that he could properly be sentenced as a persistent violent felony offender. Petition, Ground Eight. His tenth ground asserts that the imposed sentence of twenty-five years to life imprisonment for the robbery conviction,

---

[12]  Under the AEDPA, determination of factual issues made by a State court "shall be presumed to be correct," and a petitioner is required to rebut this presumption by clear and convincing evidence. *Majid v. Portuondo*, 428 F.3d 112, 125 (2d Cir. 2005) (citing 28 U.S.C. § 2254(e)(1)).

combined with the consecutive, five year prison term he received for the criminal possession of a weapon conviction, is "harsh and excessive." *Id.*, Ground Ten.

As noted *ante*, petitioner is procedurally barred from pursuing his eighth ground for relief in this action.  Turning to Kirton's claim that the imposed sentences are harsh and excessive, it is determined that this claim fails to acknowledge the well established authority that "[n]o federal constitutional issue is presented where . . . the sentence is within the range prescribed by state law."  *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992) (citing *Underwood v. Kelly*, 692 F.Supp. 146 (E.D.N.Y. 1988), *aff'd mem.*, 875 F.2d 857 (2d Cir. 1989)); *see also Johnson v. Ricks*, No. 02-CV-1366, 2007 WL 3171782, at *19 (Oct. 29, 2007) (McCurn, S.J.), *appeal dismissed sub nom. Johnson v. Senkowski et al.*, No. 07-5182-pr (2d Cir.), *cert. denied* ___ U.S. ___, 129 S.Ct. 755 (2008).

The Third Department considered – and rejected – Kirton's claim challenging the imposed sentences as being harsh and excessive.  *See Kirton*, 36 A.D.3d at 1015. Since petitioner has not presented any evidence in conjunction with his habeas petition which suggests that the sentences were not authorized under New York law, this habeas claim will be denied.[13]

Arguably, this ground could be liberally construed as one claiming that the imposed sentences constitute a violation of the Eighth Amendment to the United States Constitution, which prohibits the imposition of a sentence that is "grossly disproportionate

---

[13]   Moreover, the County Court could properly impose consecutive sentences on Kirton because the robbery and criminal use of a firearm conviction constituted distinct offenses.  *E.g.*, *People v. Laureano*, 87 N.Y.2d 640, 643 (1996); *Bethune v. Superintendent, Bare Hill Correctional Facility*, 299 F.Supp.2d 162, 166 (W.D.N.Y. 2004) ("Concurrent sentences are mandated in New York only if two or more offenses are committed (1) 'through a single act or omission,' or (2) 'through an act or omission which in itself constituted one of the offenses and also was a material element of the other'") (citing New York Penal Law § 70.25(2)).

to the severity of the crime." *Rummel v. Estelle*, 445 U.S. 263, 271 (1980). However, "[o]utside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare." *Rummel*, 445 U.S. at 272; *see Harmelin v. Michigan*, 501 U.S. 957, 995 (1991) (the Eighth Amendment only forbids only sentences which are "grossly disproportionate" to the crime); *see also Hutto v. Davis*, 454 U.S. 370, 374 (1982). A sentence of imprisonment which is within the limits of a valid state statute is simply not cruel and unusual punishment in the constitutional sense. *Brumfield v. Stinson*, 297 F. Supp.2d 607, 622 (W.D.N.Y. 2003) (citing *Thompson v. Lord*, No. 97-CV-0792, 2002 WL 31678312, at *8 (N.D.N.Y. Nov. 8, 2002) (Peebles, M.J.)

[, *adopted*, *Thompson v. Lord*, No. 97-CV-0792 (Dkt. No. 19) (N.D.N.Y. Sept. 25, 2003) (Scullin, C.J.)]) (other citations omitted). Kirton has plainly not established that the imposed sentences are grossly disproportionate to the crimes he was convicted of or otherwise violative of his Eighth Amendment rights. The Court will therefore deny his tenth ground for relief.

### f. *Sandoval* Ruling

In his final claim, petitioner claims that Judge Lamont erred in his *Sandoval* ruling[14] when he determined that the prosecutor could question Kirton about his prior robbery convictions. Petition, Ground Nine.

However, Kirton did not testify on his own behalf at trial.

---

[14] A *Sandoval* hearing is utilized "to determine the extent to which [a defendant] will be subject to impeachment by cross-examination about prior bad acts if he testifies" at trial. *Jones v. Artuz*, No. 97-CV-2063, 2002 WL 31006171 at *9 (E.D.N.Y. Aug. 30, 2002).

"A habeas petitioner's failure to testify at trial is fatal to any claims arising out of a *Sandoval* type ruling [because] absent such testimony, a court has no adequate non-speculative basis upon which to assess the merits of that claim." *Ciochenda*, 2009 WL 1026018, at *6 (internal quotations and citations omitted); *see also Blades v. Miller*, 167 F. Supp.2d 628, 636 (S.D.N.Y. 2001) (petitioner "barred" from obtaining habeas relief based upon claimed *Sandoval* error where he did not testify at trial).

In light of the foregoing, Kirton's ninth ground for relief will also be denied.

## III.  Certificate of Appealability

Finally, the Court notes that 28 U.S.C. § 2253(c) provides in relevant part that:

> (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from –
>
> > (A) the final order in a habeas corpus proceed- ing in which the detention complained of arises out of process issued by a State court . . . .

28 U.S.C. § 2253(c)(1)(A).[15]  A Certificate of Appealability may only be issued "if the applicant has made a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2).  Since petitioner has failed to make such a showing, the issuance of any Certificate of Appealability will be declined in this matter.

THEREFORE, it is

ORDERED, that

1.  Petitioner's habeas petition (Dkt. No. 1) is DENIED and DISMISSED;

---

[15]   Rule 22 of the Federal Rules of Appellate Procedure also provides that an appeal may not proceed "unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)."  *See* Fed.R.App.P. 22(b).

2.  A Certificate of Appealability will not be issued in this matter; and

3.  The Clerk shall serve a copy of this Order on the parties.

IT IS SO ORDERED.

Dated:   October 28, 2009
      Utica, New York.

_____
United States District Judge